**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RONALD M. DOLIN,

Plaintiff,

v.

Case 1:26-cv-01574-MIS-GBW

TRIAD NATIONAL SECURITY, LLC,
and TECHSOURCE, INC.,

Defendants.

**ORDER GRANTING IN PART DEFENDANT TRIAD NATIONAL SECURITY, LLC's MOTION TO DISMISS AND ENTERING AN ORDER TO SHOW CAUSE**

**THIS MATTER** is before the Court on Defendant Triad National Security, LLC's ("Triad" or "Defendant") Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) filed on July 17, 2026. ECF No. 5 ("Motion"). Plaintiff Ronald M. Dolin ("Mr. Dolin" or "Plaintiff") filed a Response on August 26, 2026, ECF No. 13 ("Response"), to which Defendant filed a Reply on September 23, 2026, ECF No. 16. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART** and **DENY IN PART** the Motion. In addition, the Court will order that Triad, the remaining defendant to the case, **SHOW CAUSE** as to whether the court maintains subject matter jurisdiction over the tortious interference with contract claim.[1]

## I. Background

Plaintiff filed suit against Defendants Triad National Security, LLC, and TechSource, Inc. ("TechSource"), in the First Judicial District Court of New Mexico, in Los Alamos County on

[1] Defendant Triad is the sole defendant in this case following the Court's dismissal without prejudice of Defendant TechSource, Inc. ECF No. 18.

March 6, 2026. ECF No. 1-2 at 1. Six days later, Plaintiff filed the operative First Amended Complaint. Am. Compl., ECF No. 1-2 at 1. The First Amended Complaint contains three state-law claims: (1) interference with Mr. Dolin's contract with TechSource; (2) negligence; and (3) declaratory judgment and injunction; as well as (4) a claim for damages. ECF No. 1-2 at 13–14. Triad removed the case to federal court on May 15, 2026. ECF No. 1.

The events leading up to his termination from both Triad and TechSource, Inc. provide the basis for Mr. Dolin's claims.[2] For around 35 years, from 1983 until 2018, Mr. Dolin was employed by the Los Alamos National Laboratory ("LANL"), including a period of employment by Triad, a scientific and technical consulting firm operating and managing LANL. Am. Compl. ¶¶ 1, 3. LANL contracts with both the Department of Energy ("DOE") and the National Nuclear Security Administration ("NNSA"). *Id.* ¶ 1. After 2018, Mr. Dolin continued working for Triad, who then transferred him to Triad's subcontractor, TechSource, where his job duties remained essentially the same. *Id.* ¶ 3. In 2021, Mr. Dolin became a contractor, rather than an employee, of TechSource, at the behest of Triad, maintaining his security clearance in his capacity as a contractor. *See* Dolin Dec., ECF No. 13 at 7.[3]

After Mr. Dolin became a contractor at TechSource in 2021, a publisher approached Mr. Dolin about writing and publishing a book about his career at LANL. Am. Compl. ¶¶ 4–5. In pursuit of his book project, Mr. Dolin contacted Diana Hollis, a Triad employee, who was the

[2] As required when ruling on a motion to dismiss, the Court here accepts as true all well-pleaded facts in the Complaint and views these facts in the light most favorable to Plaintiff. *In re Gold Res. Corp. Secs. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015)

[3] The Court incorporates this fact from the Declaration of Mr. Dolin attached to the Response to Triad's Motion to clarify the record of Mr. Dolin's employment. The Court notes that this fact was not clearly pled, and considers this an inference drawn in favor of Plaintiff.

LANL Classification Officer.[4] *Id.* ¶ 6. Ms. Hollis advised Mr. Dolin that he could move forward with writing the book and, "after the final editing of the book was completed" should contact the Classification Office for a full review of any classified information in the book. *Id.* Mr. Dolin interpreted this instruction to mean he should release his manuscript to his publisher for final editing before moving forward with Classification Office review. *See id.* ¶ 8. After completing the final editing of the book with his publisher, Mr. Dolin contacted Ms. Hollis on October 17, 2022, to start the review process as instructed, transmitting his edited book to the Classification Office. *Id.* ¶¶ 6–8.

On November 7, 2022, Mr. Dolin met with the LANL Security Investigation team and Mr. Dolin's division leader, who informed him that he may "be in jeopardy" for submitting the completed manuscript to his publisher prior to Classification Office review. *Id.* ¶ 8. Subsequent review by Triad's Classification Office flagged one word in Mr. Dolin's manuscript for redaction, which Mr. Dolin redacted. *Id.* ¶ 9. A second review flagged one number in Mr. Dolin's manuscript for redaction, which Mr. Dolin redacted. *Id.*

On December 21, 2022, the Security Investigation team at LANL found that, although Mr. Dolin had done nothing wrong, the release of his book to his publisher "was a high security related incident." *Id.* ¶ 10. Mr. Dolin received no citation or punishment, but the LANL Classification Office, run by Triad, was given a list of corrective actions to complete because of its handling of Mr. Dolin's book. *Id.* ¶¶ 10–11.

Then, on January 9, 2023, Triad informed Mr. Dolin "that the book was not approved for publication," citing no "valid" reasoning for its decision. *Id.* ¶ 12. In subsequent meetings and

[4] Classification Officer is a job title described in DOE Order 475.2B as having a variety of roles involving overseeing evaluation, self-assessment, and classification decision reviews in a field element. DOE Order 475.2B at 11–12.

efforts, taking up a substantial amount of his time, Mr. Dolin sought to gain permission to publish his book. *Id.* ¶ 13. Triad and LANL continued to deny him permission to publish, explaining that Ms. Hollis had determined the book was classified, nothing could be done, and, falsely, citing federal agency security concerns. *Id.* ¶¶ 13–14. Then, on April 20, 2023, Triad terminated its contract with Mr. Dolin, also ordering TechSource to terminate its contract Mr. Dolin, and his security clearance was revoked. *Id.* ¶ 15. Mr. Dolin received no explanation for his termination. *Id.* ¶¶ 16–17. He alleges that he was terminated to protect Triad from facing consequences that may follow an appeal of the classification review and decision by Mr. Dolin. *Id.*

## II. Legal Standard

### *A. Motion to Dismiss for Failure to State a Claim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

Courts will consider arguments from the moving party regarding preemption on a motion to dismiss for failure to state a claim when preemption is a defense against suit and liability as a matter of law, rather than against federal court jurisdiction. *See, e.g.*, *Testa v. Broomall Operating Co., L.P.*, 622 F. Supp. 3d 4, 9–12 (E.D. Pa. 2022) (considering Defendant's preemption argument as a defense against liability in reviewing a Rule 12(b)(6) motion); *Stewart v. Int'l Union, Sec., Police and Fire Pros. of Am.*, 271 F. Supp. 3d 276, 283 (D.D.C. 2017) (same); *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 362–63 (S.D.N.Y. 2008) (same). Courts will also consider arguments for dismissal related to exhaustion of remedies and the primary jurisdiction doctrine on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Verizon Wireless (VAW) LLC v. City of Rio Rancho, N.M.*, 476 F. Supp. 2d 1325, 1339–40 (D.N.M. 2007) (considering, and ultimately denying, a motion to dismiss resting on the primary jurisdiction doctrine); *Yellow Corp., v. Int'l Bhd. of Teamsters*, No. 24-3111, 2025 WL 3089412, at *9 (10th Cir. Nov. 5, 2025) (same); *but see S.W. Org. Project v. U.S. Dept. of the Air Force*, 526 F. Supp. 3d 1017, 1065–67 (D.N.M. 2021) (considering application of the primary jurisdiction doctrine on defendant's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction).

***B. Judicial Notice of Adjudicative Facts.***

Rule 201 allows courts to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). A "court may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), including at the motion to dismiss stage, *see Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (upholding a district court's decision to take judicial notice of "matters of public record such as

state statutes" at the motion to dismiss stage); *Levy v. Ohl*, 477 F.3d 988, 991–92 (8th Cir. 2007) (upholding a district court's decision to take judicial notice of public court records at the motion to dismiss stage).

**III. Discussion**

Defendant Triad makes four distinct arguments. First, Triad argues that Mr. Dolin failed to exhaust his administrative remedies pursuant to Orders from the DOE. Mot. at 6–10. In support of this and other arguments, Triad urges that this Court should take judicial notice of DOE Order 475.2B, among other related statutes, regulations, and orders. Mot. at 7; *see also* U.S. Dept. of Energy, Order 475.2B, Identifying Classified Information (Oct. 3, 2014).[5] In the alternative, Triad argues that the Court should apply the primary jurisdiction doctrine. Mot. at 6–10. Triad goes on to argue that Mr. Dolin's state tort law claims are preempted by both field preemption and conflict preemption. Mot. at 11–16. Defendants do not argue that Mr. Dolin's Complaint otherwise fails to state a claim.

Plaintiff argues that he has stated plausible claims that should survive the Motion. Resp. at 1–2. Plaintiff argues that exhaustion, primary jurisdiction, and preemption do not apply to these state law claims because the state law claims relate only to Mr. Dolin's injuries in tort, rather than any issues related to classification of documents in DOE Order 475.2B or otherwise. *Id.* at 2–3.

Upon review, the Court cannot yet find that Plaintiff's claims should be dismissed due to failure to exhaust remedies or the primary jurisdiction doctrine. However, the Court does find that two of Plaintiff's three substantive claims are preempted by field preemption.

---

[5] The Court notes that DOE Order 475.2B is also publicly available at the following link: https://www.energy.gov/documents/identifying-classified-information [https://perma.cc/JQ6N-RVMP].

### ***A. The Court will take judicial notice of federal statutes, regulations, and orders to the extent they contain adjudicative facts.***

In its Motion, Triad asks the Court to take judicial notice of "federal regulations, orders, and directives cited above." Mot. at 6. Although vague in exactly which facts Triad asks the Court to take judicial notice of, the Court interprets the request as follows. Triad has requested that the Court take judicial notice of: (1) 48 C.F.R. 17.6, (2) 48 C.F.R. § 952.204-2 (2024), (3) 42 U.S.C. § 2162 ("the Atomic Energy Act"), (4) Executive Order 13526 (Dec. 29, 2009), (5) U.S. Dept. of Energy Order 241.1B, Scientific and Technical Information Management (Dec. 13, 2010), (6) U.S. Dept. of Energy Order 241.1C, Scientific and Technical Information Management (Oct. 8, 2024), (7) U.S. Dept. of Energy Order 241.1D,[6] Scientific and Technical Information Management (Aug. 5, 2026), and (8) DOE Order 475.2B.

The Court will take judicial notice of each listed statute, regulation and order to the extent they include adjudicative facts, because Triad has satisfied the Rule 201 requirements. Rule 201 requires the Court to take judicial notice if: (1) the fact "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned[,]" making it "not subject to reasonable dispute[;]" (2) a party requests it; and (3) the party provides the court with the information regarding the adjudicative facts it has requested the court to notice. Fed. R. Evid. 201(b)–(c). Here, Triad has asked the Court to notice only statutes, regulations, and orders readily available in the public domain. Anyone with access to the United States statutes, regulations, and DOE website cannot reasonably dispute their authenticity. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of

[6] Defendant has specifically requested that the Court notice DOE Orders 241.B and 214C. Mot. at 6. However, active DOE Order 241.1D cancelled order DOE Order 241.1C (which in turn cancelled DOE Order 241.1B) after its approval on August 5, 2026. Therefore, the Court will notice the active DOE Order 241.1D as well to the extent it contains adjudicative facts.

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))); *D.B. v. DBZ Enters. LLC*, 824 F. Supp. 3d 1024, 1035 (C.D. Cal. 2025) (taking judicial notice of a federal statute at the motion to dismiss stage); *but see Potter v. Meza*, CV-25-663-PHX-DWL, 2026 WL 35276 at *6 (D. Ariz. Jan. 6, 2026) (declining to take judicial notice of a state statute at the motion to dismiss stage even though "[t]he Court could take judicial notice" of that statute). In addition, Triad has both requested that the Court take judicial notice of and provided the Court with a citation to each relevant statute, regulation, and order. Mot. at 3–5.

Triad also asks the Court to "take judicial notice of the fact that Triad is a government contractor subject to the federal regulations, orders, and directives cited above." Mot. at 6. The Court does not need to take judicial notice of the fact that Triad is a federal contractor, because this is stated in the Complaint. Am. Compl. ¶ 1. However, the Court will take judicial notice of the fact that the noticed statute, regulations, and orders apply to Triad as they would, from their text alone, apply to any federal contractor similarly situated to Triad.

Defendant, and therefore the Court, relies primarily on the Atomic Energy Act, Executive Order 13526, and DOE Order 475.2B in its Motion. In the relevant parts, the Atomic Energy Act § 2162 requires the Atomic Energy Commission ("the Commission") to "determine the data, within the definition of Restricted Data, which can be published without undue risk to the common defense and security and shall thereupon cause such data to be declassified and removed from the category of Restricted Data." 42 U.S.C. § 2162(a). The Act further requires the Commission to "maintain a continuous review of Restricted Data and of any Classification Guides issued for the guidance of those in the atomic energy program." 42 U.S.C. § 2162(b).

Executive Order 13526 provides more specifics regarding the "uniform system for classifying, safeguarding, and declassifying national security information[.]" 75 F.R. at 707. Section 1.4 states that "[i]nformation shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . and it pertains to . . . (f) United States Government programs for safeguarding nuclear materials or facilities." *Id.* at 709. The Executive Order goes on to authorize the Secretary of Energy to determine "when information concerning foreign nuclear programs that was removed from the Restricted Data category in order to carry out provisions of the National Security Act of 1947, as amended, may be declassified." *Id.* at 716.

Finally, DOE Order 475.2B enacts Executive Order 13526 by "establish[ing] the program to identify information classified under the Atomic Energy Act." DOE Order 475.2B at 1. The DOE Order limits its own application to DOE contractors operating under contracts containing a Contractor Requirements Document ("CRD"). *Id.* The DOE Order applies to contractors as follows: "Except for the equivalency in paragraph 3.c.(3), the CRD (Attachment 1) sets forth requirements of this Order that will apply to contracts that include the CRD. The CRD must be included in contracts that may generate classified information, documents, or material." *Id.*

Attachment 4 to the DOE Order specifies the "Classification/Declassification Review Requirements," including those contracts that include a CRD. *Id.* at 39–51. Generally, Attachment 4 provides a guide for conducting Classification and Declassification Reviews. *Id.* Section 4 of Attachment 4 contains a process by which employees may challenge classification decisions. *Id.* at 50–51. Specifically, the DOE Order "encourage[s employees] to challenge the classification of information, documents, or material that he or she believes is improperly classified." *Id.* at 50. First, the Director of the Office of Classification and the Classification Officer will provide a

review and a response to the challenge. *Id.*. From there, the employee may appeal to the Director of the Office of Classification, then the Associate Under Secretary for Environment, Health, Safety, and Security, and finally to the Interagency Security Classification Appeals Panel. *Id.*

***B. Exhaustion of Remedies Does Not Yet Apply to Plaintiff's Claims***

In general, federal courts require plaintiffs to pursue relief through all levels available to them from an administrative agency before seeking relief from a court. *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). "[U]ntil that recourse is exhausted, suit is premature and must be dismissed." *Id.* Here, however, Triad fails to clearly explain and demonstrate how the terms of DOE Order 475.2B, the sole authority cited for its claim that there is an administrative process to exhaust, apply to Plaintiff's manuscript such that text of Order itself establishes that Plaintiff has failed to exhaust administrative remedies.

Two main issues cause this argument to fail at the motion to dismiss stage. First, Defendant cannot establish at this stage that its contracts with the DOE and its subagencies, or its own contract with subcontractor TechSource, incorporate a CRD as required by DOE Order 475.2B. *See* DOE Order 475.2B at 1. Even with the judicially noticed fact that DOE Order 475.2B applies to government contractors like Triad, Triad cannot yet introduce its own contracts to demonstrate that they contain a CRD, as required by DOE Order 475.2B, at the motion to dismiss stage. Accordingly, the Court cannot yet conclude the administrative appeals process in DOE Order 475.2B applies to Triad and its employees at LANL.

Second, it is unclear from the text of DOE Order 475.2B how it applies to a pre-publication review process for contractors. *See id.* at 44–45. This is in contrast with the Order's clear application to both Headquarters and "field element[s] that generate[] classified information, documents, or material." *Id.* at 2–3. Moreover, DOE Order 475.2B does not mention pre-

publication review. Accordingly, application of DOE Order 475.2B to a pre-publication review process of a book manuscript created outside of Plaintiff's contract work with Triad and TechSource is also not an inference available to the Court on a motion to dismiss.

In addition, other inferences that would be necessary for the Court to dismiss any of Plaintiff's claims for failure to exhaust administrative remedies are unavailable here, including Plaintiff's continued access to an appeals process after termination and the contents and existence of any non-disclosure agreements signed by Plaintiff related to his contracts with Triad and TechSource. *See id.* at 50–51; *Stillman v. C.I.A.*, 319 F.3d 546, 547 (D.C. Cir. 2003) (describing how a plaintiff formerly employed at LANL "signed several nondisclosure agreements that required him to present the manuscript to the Government for prepublication review in order to determine whether it contained classified information"). Accordingly, more evidence and argument would be necessary for the Court to dismiss any of Plaintiff's claims because of failure to exhaust administrative remedies.

### *C. Primary Jurisdiction Similarly Does Not Yet Apply to Plaintiff's Claims*

"Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies." *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005). The doctrine "comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). When primary jurisdiction applies, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* The analysis, although not a "mechanical formula," focuses on the doctrine's two overarching purposes: promoting (1) "regulatory uniformity by preventing courts from interfering sporadically with a comprehensive regulatory

scheme," and (2) "resort to agency expertise by allowing courts to consult agencies on issues of fact not within the conventional experience of judges." *Verizon Wireless*, 476 F. Supp. 2d at 1340 (citing *S. Utah Wilderness Alliance*, 425 F.3d at 751).[7]

Here, Triad claims that the regulatory scheme that would cause the primary jurisdiction to attach to Mr. Dolin's claims is the primary jurisdiction of the DOE over nuclear program data classification decisions. Specifically, Triad frames the regulatory scheme at issue here as DOE's power to make determinations "of classification questions arising from LANL" matters, like those identified in DOE Order 475.2B. Mot. at 6. Plaintiff similarly acknowledges the regulatory scheme as one involving "classification." Resp. at 3. However, the Court declines to apply primary jurisdiction at the motion to dismiss stage here because, as with the exhaustion of administrative remedies issue, there are not currently facts on the record that support the precise regulatory framework at issue as it relates to Triad, TechSource, and pre-publication review of Mr. Dolin's book manuscript. Therefore, it remains unclear to the Court at this stage how or whether Triad, or another actor, would make the type of final determination related to the classification of Mr. Dolin's book that could then inform the court's ruling as the primary jurisdiction doctrine contemplates.

---

[7] Although the Court does not engage in this analysis here, the Tenth Circuit "enumerates a five-factor standard," capturing and expanding on the two overarching purposes of the doctrine, "that courts must consider when evaluating the primary jurisdiction doctrine's applicability to its exercise of jurisdiction over a case." *S.W. Organizing Project v. U.S. Dept. of the Air Force*, 526 F. Supp. 3d 1017, 1033 (D.N.M. 2021). These factors are: (1) whether the Court "is being called upon to decide factual issues not within the conventional experience of judges, or are instead issues of the sort that a court routinely considers"; (2) "whether [d]efendants could be subjected to conflicting orders of both the Court and the administrative agency"; (3) "whether relevant agency proceedings have actually been initiated"; (4) "whether the agency has demonstrated diligence in resolving the issue or has instead allowed the issue to languish"; and (5) whether the "plaintiff is seeking damages or injury to property or person, as this is the type of relief courts routinely evaluate," or whether "plaintiff seeks injunctive relief, requiring scientific or technical expertise" in which case deferring to agency expertise may be more appropriate. *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995) (citing *Marshall v. El Paso Natural Gas Co.*, 847 F.2d 1373, 1376–77 (10th Cir. 1989)).

***D. Counts II And III Are Preempted.***

Finally, Defendant Triad argues that Mr. Dolin's claims are preempted by both field and conflict preemption. Preemption doctrine derives from the Supremacy Clause of the U.S. Constitution which "provides that the laws of the United States 'shall be the supreme Law of the Land[,] . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Chamber of Com. of the U.S. v. Edmonson*, 594 F.3d 742, 765 (10th Cir. 2010) (quoting U.S. Const. art VI, cl. 2). Preemption of a state law may be implied as field preemption when either "the scheme of federal regulation is sufficiently comprehensive to make the reasonable inference that Congress 'left no room' for supplementary state regulation," or "'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Federal law may also impliedly preempt state law through conflict preemption, which involves a conflict between state and federal law such that the state law is an "obstacle" to compliance with federal law or it is "impossible" to comply with both state and federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000).

When analyzing a potential preemption issue, the Court considers first "the purpose of Congress" in the relevant legislation, and second "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations and citations omitted). Defendant specifically argues that the Atomic Energy Act, 42 U.S.C. § 2162, as well Executive Order 13526 and the judicially noticed DOE Orders, together establish that Congress has occupied the field of confidential national security-related document classification and

declassification, specifically as it relates to nuclear energy. ECF No. 5 at 13–15. In addition, Defendant argues that applying both state tort law and federal classification law to agency and contractor classification decisions would create sufficient conflict for conflict preemption. *Id.* at 15–16.

First, the Court looks to the "the structure and purpose" of how 42 U.S.C. § 2162, and the larger context of the Atomic Energy Act of 1954, "as a whole . . . [by reviewing] the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (internal quotation and citation omitted). Defendant points to a case from the Fourth Circuit, *Cox v. Duke Energy*, as an analog for how the Court should interpret the classification provision. 876 F.3d 625 (4th Cir. 2017). Robert Fleming had repeatedly flown his glider plane over a nuclear plant in South Carolina run by Duke Energy Progress, Inc., arousing the suspicion of the plant's security personnel. *Id.* at 627. The security team, therefore, alerted the county sheriff's office, the airport, the Federal Aviation Administration, and the Shaw Air Force Base of the plane's activity. *Id.* Fleming later sued Duke Energy for various claims including state law tort claims of false imprisonment, false arrest, negligence, and civil conspiracy, for alleged injuries stemming from his arrest, questioning, and time in custody that followed the nuclear plant security personnel's actions. *Id*. at 627–28.

The foundation of the ruling in *Cox* is the finding, as articulated by the Supreme Court, that "the federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states." *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983). Building on this notion, the *Cox* Court found that Congress had preempted state tort law in suits involving nuclear safety, specifically where "imposing liability based on such claims would have a 'direct and substantial effect' on decisions

designed to ensure the facility's safety[.]" 876 F.3d at 635–36 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 85 (1990)). In addition, the *Cox* Court found that imposing state tort liability on nuclear security decisions may induce hesitation that "could thus compromise the responsibility of reporting threats promptly before it becomes too late for the government to respond[.]" *Id.* at 636.

Like *Cox* found for *physical* nuclear program safety concerns, the Court finds that the Atomic Energy Act, 42 U.S.C. § 2162, and related regulations and orders cover the field for *data-related* nuclear program safety concerns. This is supported by the Congressional intervention itself which "prohibit[ed] and punish[ed] the dissemination" of classified nuclear program data because it would "sufficiently imperil national security to warrant that result." *N.Y. Times Co. v. United States*, 403 U.S. 713, 743 n.3 (1971) (Marshall, J., concurring). Given the weight of these interests, the same considerations for physical safety of the nuclear program present in *Cox* are present here. Namely, that imposing state tort liability on nuclear data security decisions would have a "direct and substantial effect" on decisions made to safeguard data related to the United States' nuclear program. *See English*, 496 U.S. at 85.

The Complaint here makes it clear that Triad personnel, like Ms. Hollis, are key actors in charge of making classification and declassification decisions at LANL, a facility where engineers and scientists with access to classified information work on nuclear energy projects. *See* Am. Compl. ¶¶ 1, 3, 5. These classification and declassification decisions lie at the core of the "risk to the common defense and security" that Congress considered when setting up systems to protect data related to nuclear energy projects. 42 U.S.C. § 2162(a). Thus, just allowing tort liability to reach nuclear data classification decisions would affect the types of decisions covered by Congress.

Furthermore, imposing state tort liability for actions related to making data security decisions may affect the end result of data classification and declassification decisions themselves. In evaluating whether information submitted for pre-publication review is classified and should be redacted, the constellation of statues, regulations, and orders noticed by the Court, direct decisionmakers. However, potential exposure to state tort liability creates an additional variable, beyond what Congress intended, that may affect classification and declassification decisions. For example, a government contractor like Triad operating under federal classification regulations and orders may have an incentive to be overly deferential to employees seeking pre-publication review to avoid potential liability damages.[8] And such adverse incentives may undermine the integrity of nuclear program data security.

Moreover, the regulatory scheme related to classification and declassification of nuclear information, as implemented by Executive and DOE Orders, further demonstrates that Congress intended to preempt state police powers on issues of nuclear data safety. Executive Order 13526 specifically states that information pertaining to "United States Government programs for safeguarding nuclear materials or facilities" shall be considered for classification if "its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Executive Order 13526 § 1.4(f), 75 Fed. Reg. 707, 709 (Dec. 29, 2009). And the DOE Orders provide the information and processes used to consider nuclear program data for classification. *See generally*, DOE Order 241.1D ("This Order establishes requirements and responsibilities for identifying, reviewing, collecting, controlling, preserving, and disseminating"

---

[8] However, the Court notes a key difference between Triad's classification decisions and the types of safety decisions made by operators of nuclear facilities in *Cox*. In *Cox*, the operator was not in control of how outside authorities may act after it reported a potential safety issue. 876 F.3d at 636. Here, however, there is no analogous third party that may act tortiously with a causal link to a classification decision made by a contractor like Triad. Still, the Court considers the impacts of potential tort liability on decisionmakers to favor preemption.

scientific and technical information;" DOE Order 475.2B (This Order "establish[es] the program to identify information classified under the Atomic Energy Act . . . or Executive Order (E.O.) 13526 . . . so that it can be protected against unauthorized dissemination."). Together, these Orders protect nuclear program data as a national security issue, and one which "courts have recognized . . . the [federal] government has 'a compelling interest in protecting[.]'" *Edgar v. Haines*, 2 F.4th 298, 304 (4th Cir. 2021) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)).

Accordingly, the Court finds that Congress had sufficiently covered the field of nuclear program data security and now turns to whether Plaintiff's claims are preempted.[9]

**1. Count II is preempted.**

Count II seeks to impose liability because "Defendant Triad was negligent in its advice to Mr. Dolin regarding publication, the use of its flawed procedure, the self-serving determination that the book was not publishable, and in revoking Plaintiff's security clearance." Am. Compl. ¶ 23. In other words, Mr. Dolin seeks to impose state tort liability on Triad for how it applied the nuclear data safety protocols laid out in the Executive and DOE Orders, as envisioned by Congress in the Atomic Energy Act, to his pre-publication review process. However, as explained above, the Atomic Energy Act and the regulatory scheme flowing from it preempt state tort claims related to nuclear program data security decisions. Accordingly, Count II is preempted by the Atomic Energy Act, and therefore, is dismissed with prejudice. *See*, *Sturgeon v. ABF Freight Sys., Inc.*, 2-cv-1317-JB-WDS, 2004 WL 7338196 at *2 (D.N.M. Jan. 7, 2004) ("[W]hen federal courts have found state law claims to be completely preempted by federal law, the courts dismiss the state

[9] Although Congress has covered the field and preempted state laws from acting on nuclear program data security decisions, federal courts will consider pre-publication review issues that properly raise constitutional questions. *See, e.g.*, *Stillman*, 319 F.3d at 548 (considering the validity of the pre-publication review decision barring a book for publication written by a former employee of LANL).

claims with prejudice." (citing *Botsford v. Blue Cross & Blue Shield of Mont.*, 314 F.3d 390, 399 (9th Cir. 2002); *Kaufman v. Allied Pilots Assoc.*, 274 F.3d 197, 204 (5th Cir. 2001); *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1041 (11th Cir. 1995))).

**2. Count III is preempted.**

Although not cited in the Complaint, the Court construes Count III as a claim under the New Mexico Declaratory Judgment Act. *See* N.M. Stat. Ann. 44-6-1 et seq.; Resp. at 1. In seeking a declaratory judgment from the Court of "the rights and legal status of Plaintiff and Triad and the right to publish [Plaintiff's] book," Plaintiff again seeks to utilize state law mechanisms to receive a remedy in a field Congress has covered—nuclear program data security. Am. Compl. ¶ 27. Even with the favorable standard on a motion to dismiss, the facts show that Triad's power to review Plaintiff's book in the pre-publication review process derives entirely from the federal statutes, regulations, and orders related to nuclear program data security. Without these federal mandates and systems, the review process that led to Triad's decision, regardless of the merits, would not exist. Therefore, this decision itself, and any remedy altering that decision, falls under the field of preemption established above. Accordingly, Count III is also preempted by the Atomic Energy Act and dismissed with prejudice.

**3. Counts I and IV are not preempted.**

Count I is not preempted by field preemption because this claim asks the Court to consider an issue outside of the preempted field of nuclear program data security. Furthermore, the Court finds no conflicts between the state and federal laws at issue. In Count I, Plaintiff claims that Triad tortiously interfered in his contract with TechSource. Am. Compl. ¶¶ 18–21. Triad attempts to cast this claim in a similar light as Counts II and III, arguing that all of Mr. Dolin's "claims cannot be

resolved independently of the underlying federal classification issues." Reply at 1. This, however, is not the case with Count I.

In New Mexico, a plaintiff's prima facie case for tortious inference with a contract must allege facts that (1) a defendant had knowledge of the relevant contract, (2) "performance of the contract was refused," (3) "[d]efendants played an active and substantial part in causing" plaintiff to lose the benefits of the contract, (4) "damages flowed from the breach of contract," and (5) "[d]efendants induced the breach without justification or privilege." *Guest v. Berardinelli*, 195 P.3d 353, 363 (N.M. Ct. App. 2008) (citing *Ettenson v. Burke*, 17 P.3d 440 (N.M. 2001)). Triad does not argue that Plaintiff has not properly pled each element of the prima facie case. Moreover, Plaintiff here has plausibly pled each element of the tort without seeking to impose liability on Triad in relation to the pre-publication review process, and related preemption issue, described above.

In the relevant part, the Complaint alleges that Triad instructed TechSource to terminate its contract with Plaintiff, after initially requesting that TechSource contract with Plaintiff. Crucially, Plaintiff alleges that Triad interfered without justification not because of its decision or decisionmaking with respect to pre-publication review of Plaintiff's book, but rather, to prevent Plaintiff from bringing any issues with the review to light in an appeal. As alleged, therefore, this claim does not seek to impose liability on Triad because of how or whether it followed federal law regarding nuclear program data safety. That Triad's defense to this claim may be related to pre-publication review process does not affect the Court's decision at the motion to dismiss stage. Nor is the Court convinced that Plaintiff's pursuit of this claim could result in inconsistency in how Triad would apply the relevant federal law, and thus, conflict preemption also does not apply. Accordingly, Count I survives the Motion.

Count IV—a claim for damages related to Plaintiff's loss of employment, stemming from the remaining tortious interference with contract claim—also survives the Motion as it relates to the remaining claim, Count I.

## IV. Order to Show Cause

The remaining substantive claim in the operative complaint, Count I, is a state law tortious inference with contract claim. Defendant removed this case to federal court under 28 U.S.C. § 1331, the Court's federal question jurisdiction, because of the federal laws and regulations at the core of the dispute. ECF No. 1 at 1–5. However, the Court has found that the remaining tortious interference with contract claim is not preempted by the Atomic Energy Act, eliminating the applicability of the federal issues Triad identified in its removal. Accordingly, the Court orders Defendant to show cause why the case should not be remanded for lack of subject matter jurisdiction.

## V. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that: Defendant Triad's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART;** and Counts II and III are **DISMISSED WITH PREJUDICE**. In addition, Defendant shall, within 21 days of entry of this Order, show cause as to why the Court should not remand the case due to lack of subject matter jurisdiction over the remaining state law claim. Failure to timely show cause may result in remand of the case to state court.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE